UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. 6: 04-65-DCR |
| | ) | Civil Action No. 6: 07-251-DCR |
| V. | ) | |
| | ) | |
| TIMOTHY B. HARDING, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant/Petitioner. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant/Petitioner Timothy B. Harding's ("Harding") Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2255. [Record No. 174]  According to local practice, the matter was referred to United States Magistrate Judge Robert E. Wier for the preparation of a Recommendation Disposition under 28 U.S.C. §636(b)(1)(B).  On June 24, 2008, the Magistrate Judge recommended that Harding's petition be denied and that a certificate of appealability not issue. [Record No. 213]

Harding filed objections to the Magistrate Judge's Recommended Disposition on August 4, 2008. [Record No. 219]  Having reviewed these objections, the record before the Court, and the relevant law *de novo*, this Court agrees with the Magistrate Judge's recommendations. Accordingly, Harding's petition will be denied and the United States' motion to dismiss will be granted. [Record No. 183]

## I.      Factual Background

Kentucky authorities obtained an arrest warrant for Harding based on information they obtained from Johnny Pingleton.  Pingleton told the authorities that Lisa Witt, John Rodefer, Timothy Harding and he were involved in a conspiracy to produce methamphetamine.  Based on this information, officers went to Harding's residence.  Upon arrival, they reportedly smelled a strong chemical odor.  They encountered Lisa Witt who informed them that Harding was not at the residence, but she gave the officers permission to search for him.  In searching the home, the officers observed a trash can in one of the bedrooms that contained a Mountain Dew bottle with "tubing inside" and "discarded blister pill packs." [Record No. 138]  They also observed "a straw with a residue and a piece of aluminum foil" on a bedroom dresser. [Record No. 138]  On that same day, officers also investigated a barn approximately fifty yards from the home.  Again, the police detected a strong odor.  They saw an individual exit the barn.  The officers later learned that this individual was Timothy Wayne Harding, the Defendant's thirteen year-old son.  The younger Harding told authorities that he had been paid $50 to punch out Sudafed and pseudoephedrine blister pack tablets. [Record No. 138]

The authorities obtained a search warrant for Harding's residence and curtilage.  As a result of the search, they located chemicals and equipment used to manufacture methamphetamine, including lithium batteries, Coleman fuel, anhydrous ammonia, and pseudoephedrine.  The officers also seized over 2,660 pseudoephedrine tablets during the search.  Further, the police found ammunition and firearms inside the residence. [Record No. 138]

Harding was arrested on March 3, 2004. At the time of his arrest, he had $1,620 in cash, approximately 237 milligrams of methamphetamine, lithium batteries and a significant quantity of pseudoephedrine on his person. Harding posted bond and was released from state custody on March 8, 2004. However, on April 5, 2004, Harding, Lisa Witt, Satica Vance and John Rodefer were arrested in Harrison, Ohio, when law enforcement stopped their van and found them to be in possession of a large amount of pseudoephedrine and lithium batteries.

On August 26, 2004, Harding was charged in an eight count indictment. Specifically, the Indictment charged Harding with conspiring to manufacture methamphetamine (Count 1), aiding and abetting others in the manufacture of methamphetamine (Count 2), possessing List 1 Chemicals used to manufacture methamphetamine (Counts 3 and 6), possessing equipment, products and materials used to manufacture methamphetamine (Counts 4 and 7), possessing with intent to distribute methamphetamine (Count 5), and traveling in interstate commerce to promote an unlawful activity (Count 8).

On December 9, 2004, Harding plead guilty to Count 1 of the Indictment. Specifically, he pled guilty to conspiring with Lisa Witt, John Rodefer and others to manufacture fifty grams or more of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846. At re-arraignment, Harding acknowledged his role in the drug conspiracy. Harding's plea agreement contained a number of jointly recommended , but non-binding, Guideline calculations. Several of these recommendations are at issue in Harding's § 2255 motion:

> (a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2004, manual, will determine the Defendant's guideline range.

(b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes 257.14 grams of actual methamphetamine, a schedule II controlled substance.

(c) Pursuant to U.S.S.G. § 2D1.1, the base offense level is 34.

(d) Pursuant to U.S.S.G. § 2D1.1(b)(1), the base offense level is increased by two levels for the presence of firearms.

(e) Pursuant to U.S.S.G. § 2D1.1(b)(6)(C), the base offense level is increased by six levels for the offense created a substantial risk of harm to the life of a minor or an incompetent.

(f) Pursuant to U.S.S.G. § 3B1.4, the parties disagree as to whether the base offense level is increased by two levels for the use of a minor in the offense.

(g) Pursuant to U.S.S.G. § 3E1.1, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

[Record No. 9]

Harding specifically agreed to have his sentence determined by the Guidelines. In addition, he agreed to waive his "right to appeal and the right to attack collaterally the guilty plea, conviction and sentence." [Record No. 40] The Court reviewed the specific provisions of the plea agreement with Harding. Harding acknowledged that he had carefully reviewed the factual basis in the agreement, confirmed that the facts accurately reflected his conduct in the matter and admitted that the United States could prove the facts because they were "true." [Record No. 156] Harding also informed the Court that he and counsel had discussed the Sentencing Guidelines. [Record No. 156] He further indicated that he knew the calculations the plea agreement were "just a recommendation" and that his guideline range would not be determined until his sentencing hearing. [Record No. 156]

At the plea hearing, the Court reviewed the waiver provision contained in the plea agreement with Harding. [Record No. 156] He responded that he understood those provisions. [Record No. 156] The Court also informed Harding that the United States could file a departure motion if it found that he provided substantial assistance. [Record No. 156] However, the Court reminded Harding that whether the motion was filed was in the sole discretion of the United States. Again, Harding indicated that he understood. [Record No. 156]

Subsequently, on May 2, 2005, Harding was sentenced to a total term of imprisonment of 324 months. At the sentencing hearing, the Court determined that the applicable guideline range was 324 to 405 months. The presentence report (PSR) substantially followed the recommended guideline calculations in Harding's plea agreement, except that the PSR applied the disputed § 3B1.4 enhancement for using a minor (Harding's thirteen year-old son) in the offense. The Court assessed the two-level increase after rejecting the Defendant's contention that Harding was unaware of his son's involvement. Additionally, the United States refused to file a 5K departure motion. After hearing arguments from counsel and carefully reviewing all the factors set forth in § 3553, including the history and characteristics of the defendant and the need to protect the public, the Court sentenced Harding at the very bottom of the guideline range.

Although he waived his right to appeal, Harding filed an appeal following sentencing. Harding's appellate counsel filed a brief, arguing that his sentence was unreasonable. Harding also filed a *pro se* brief challenging the § 2D1.1(b)(1) firearm enhancement. Subsequently, the United States moved to dismiss the action based on the waiver provision. The Sixth Circuit

granted the United States' motion and dismissed the appeal. *See United States v. Harding*, No. 05-5781 (6th Cir. July 24, 2006).

In his petition, Harding asserted several claims for habeas relief. First, he contended that his counsel should have objected to the amount of "actual" methamphetamine that the PSR attributed to Defendant as relevant conduct, per § 1B1.3. Second, he asserted that his counsel should have argued that his meth production was solely for "personal use" to reduce his relevant conduct. Third, he claimed that his counsel was ineffective because the § 2D1.1(b)(1) enhancement, as described in the plea agreement, was "materially ambiguous" and should not have applied. Fourth, he asserted that the United States breached the plea agreement by asserting that a § 3B1.4 enhancement for using a minor in the offense should apply. Fifth, he claimed that he did not knowingly and voluntarily enter a guilty plea because he "was unaware of the consequences or constitutional rights he would forfeit." Sixth, he alleged that his appellate counsel provided ineffective assistance. Seventh, he argued that his sentence violated *Booker v. United States,* 543 U.S. 220 (2005) and *Blakely v. Washington*, 542 U.S. 296 (2004).

After reviewing Harding's claims and the United States' response, the Magistrate Judge concluded that the waiver provisions in the plea agreement were valid and enforceable. In addition, with respect to the ineffective assistance of counsel claims, the Magistrate Judge found that Harding had not shown that he was prejudiced by the waiver or that counsel performed ineffectively. The Magistrate also determined that Harding failed to establish a valid ineffective assistance claim based on appellate counsel's representation. Specifically, the Magistrate Judge determined that Harding failed to show that the result of the appeal would have been different

if counsel had raised other arguments or responded to the motion to dismiss.  Finally, the Magistrate Judge found that there was no merit to Harding's *Booker/Blakely* claims.  Ultimately, the Magistrate Judge concluded that Harding could not succeed on any of his claims and recommended that his petition be denied in full.

Harding filed objections to the Magistrate Judge's Recommended Disposition on August 4, 2008, challenging the Magistrate Judge's findings on six issues.  Through his objections, Harding again argues that: (1) the waiver provisions in the plea agreement are invalid and unenforceable; (2) trial counsel's performance was deficient or prejudicial because he failed to object to the amount of "actual" methamphetamine attributed to Harding in the PSR; (3) trial counsel's performance was deficient or prejudicial because he failed to contest the § 2D1.1(b)(1) enhancement; (4) the waiver provision in the plea agreement is ineffective because the United States breached the agreement; (5) his appellate counsel's performance was deficient and prejudicial; and (6) his sentence was unconstituional under *Booker* and *Blakely*.

## II.    Legal Standard

Under 28 U.S.C § 2255, "[a] prisoner in custody . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255.  In making such a petition, a prisoner may claim that the sentence was imposed in violation of the Constitution or federal law, that the court was without jurisdiction to impose the sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. *Id*.  "To prevail on a § 2255 motion alleging constitutional error, the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on

-7-

the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citations omitted). Additionally, "[t]o prevail on a § 2255 motion alleging non-constitutional error, the petitioner must establish a 'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process.'" *Id.* (citations omitted).

### III.    Legal Analysis

A district court must make a *de novo* determination of those portions of a magistrate judge's recommended disposition to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Therefore, the Court will address each of Harding's objections.

First, the Court finds that Harding has not presented a credible claim that he did not make an "informed and voluntary" waiver of his right to appeal. *See e.g., In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007). Rule 11 of the Federal Rules of Criminal Procedure requires that a district court verify that a defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged. *United States v. Goldberg,* 862 F.2d 101, 106 (6th Cir. 1988); Fed. R. Crim. Pro. 11. In *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999), the Sixth Circuit held that a trial court's proper

plea colloquy cures any misunderstandings that a defendant may have about the consequences of a plea.

Harding contends that he did not have sufficient time to decide whether to enter into a plea agreement with the United States. However, at the time of his plea, Harding acknowledged that he had reviewed the document with counsel and that he understood its terms. In addition, the Court specifically discussed the waiver provisions with him and Harding affirmatively stated that he understood those provisions. Although Harding now claims that his counsel did not fully explain the terms of the plea agreement or the effect of its waiver provisions, the record reflects that, at the time of the plea, Harding told the Court that he understood the waiver. Therefore, any deficiencies in counsel's performance were cured by the colloquy with the Court during the plea hearing. *See United States v. Boyd*, 2007 WL 900949, at *7 (N.D. Tex. Mar. 23, 2007 ("The information provided to movant at the plea hearing cured any deficiency of counsel regarding the waiver provision."). Accordingly, Harding's claim that he did not understand the scope or realize that it would bar his right to assert an ineffective assistance of counsel claim fails. The Court agrees with the Magistrate Judge's finding that the waiver provision of the plea agreement is enforceable.

Harding has also objected to the Magistrate's determination that he failed to demonstrate that his counsel's performance was deficient or prejudicial based on (1) the failure to object to the amount of "actual" methamphetamine attributed to him the PSR; and (2) the failure to contest the § 2D1.1(b)(1) enhancement.

To succeed on an ineffective assistance of counsel claim, a defendant must prove that his counsel's performance was deficient and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Ineffective assistance under *Strickland* is deficient performance, with performance being measured against an 'objective standard of reasonableness,' 'under prevailing professional norms.'" *Id.* (citations omitted). A petitioner must then show that there is a reasonable probability that, but for counsel's inadequate performance, the results would have been different. *Strickland*, 466 U.S. at 687. The court's scrutiny of counsel's performance is highly deferential, and counsel is strongly presumed to have rendered adequate assistance and have made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 689; *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004).

In alleging ineffective assistance of counsel, Harding suggests that his counsel should have objected to the amount of "actual" methamphetamine attributed to him in the PSR. Specifically, he argues that the total amount of the methamphetamine is "unsupportable" because the PSR based its calculation on a 100% yield. Harding asserts that the Court should have used a 50% conversion ratio, which is "more reasonable and more accurate in determining the actual amount of methamphetamine." [Record No. 219] The plea agreement and PSR indicated that Harding's relevant conduct involved 257.14 grams of actual methamphetamine. As noted by the Magistrate Judge, Harding must demonstrate that his relevant conduct was less than 150 grams to obtain a lower offense level and to show that he suffered prejudice. Harding has not made

-10-

such a showing.  Therefore, the Court agrees with the Magistrate Judge that Harding has failed to show that counsel's performance was deficient or prejudicial.  *See Strickland*, 466 U.S. at 686.

Harding also argues that he was prejudiced by his counsel's failure to object to the § 2D1.1(b)(1) enhancement.  Relying on application note 3, Harding asserts that the enhancement should not have applied.  This note states that:

> For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

U.S.S.G. § 2D1.1 n. 3 (2004).  Harding states that the enhancement should not have applied because the police found an "unloaded .22 Marlin Hunting rifle and two unloaded antique 12 gauge shotguns in the closet of the master bedroom at Movant's residence." [Record No. 219] He further states that "[w]hat's extremely difficult to believe it that the P.S.I. Report and the plea agreement both fail to confirm whether the firearms were unloaded and located in the closet." [Record No. 219]

Harding is correct that neither the PSR or the plea agreement reflect whether the firearms were unloaded and in the closet.  However, the Sixth Circuit has established that the enhancement under § 2D1.1(b)(1) is proper if the United States demonstrates that (1) the defendant actually or constructively possessed the weapon, and (2) such possession was during the commission of the offense."  *See United States v. Hill*, 79 F.3d 1477, 1485 (6th Cir. 1996). Here, the facts show that Harding had constructive possession of the .22 Marlin Hunting rifle and two antique 12 gauge shotguns firearms because the police found these at his residence. Notably, the police also found a .22 caliber RG pistol and over 300 brass shells in his kitchen. The facts clearly demonstrate that Harding had constructive possession of these as well.

-11-

The record also shows that Harding's possession of the firearms was "during the commission of the offense." *Id*. As noted by the Magistrate Judge, the PSR indicates that Harding used his residence to further the conspiracy. Moreover, these firearms were seized during the relevant time periods of the conspiracy. As noted by the Magistrate Judge, "[o]nce it is established that a defendant was in possession of a weapon during the commission of an offense, a presumption arises that such possession was connected to the offense." *Id*. Therefore, the burden shifted to Harding to show that "it is clearly improbable that the weapon was connected to the offense." *Hill*, 79 F.3d at 1485. Harding has again attempted to offer explanations to rebut the presumption that the firearms retrieved from his home were not connected to the offense. However, Harding did not satisfied this burden. Therefore, application of the enhancement was proper. Accordingly, the Court agrees with the Magistrate Judge that Harding failed to demonstrate that he was prejudiced by counsel's failure to object to the enhancement under § 2D1.1(b)(1).

Harding has also objected to the Magistrate Judge's finding on the breach claim. Specifically, Harding argues that the United States violated the plea agreement during sentencing by arguing that the § 3B1.4 enhancement should apply because the offense involved a minor. As noted by the Magistrate Judge, Harding's plea agreement initially recommended application of the enhancement. However, Harding objected to the enhancement. As a result, counsel for Harding and the United States inserted language into the plea agreement that stated "the parties disagree as to whether § 3B1.4 applies." [Record No. 40] The provision clearly did not prohibit the United States from arguing, at sentencing, that the enhancement was applicable. In fact,

based on the language of the agreement, Harding should have been aware that the United States would likely argue for the enhancement. Additionally, the record reflects that Harding could not have been misled by the language contained in the plea agreement because counsel communicated to him the precise language regarding the enhancement that had been added to the plea agreement. [Record No. 191-92] Accordingly, the Court agrees with the Magistrate Judge that Harding's breach claim has no merit.

Next, Harding has objected to the Magistrate Judge's finding that Harding failed to establish a valid ineffective assistance claim based on appellate counsel's representation. As an initial matter, the Court notes that it agrees with the Magistrate Judge that in light of the provisions of the plea agreement, Harding has waived this claim. Nevertheless, the Magistrate Judge also addressed the merits of this argument and concluded that Harding had not shown prejudice. In other words, the Magistrate Judge found that Harding failed to show that the result of his appeal would have been different if counsel had raised other arguments. The Court agrees with the Magistrate Judge's resolution of this issue. In particular, the Court notes that Harding has failed to show that the Sixth Circuit would have invalidated the waiver in the plea agreement and would have considered the appeal. Moreover, he has not established that there was any legitimate issue on appeal. And, finally, he did not demonstrate that the Supreme Court would have granted discretionary review of the Sixth Circuit's decision or that he would have prevailed on the matters raised on appeal.

Finally, Harding has objected to the Magistrate Judge's finding that his claims under *Booker/Blakely* fail. Again, the Court agrees with the Magistrate Judge that Harding has waived

-13-

this claim. Despite this conclusion, the Magistrate Judge addressed the merits of this claim, finding that:

> [t]he plea agreement provided the basis for the District Court's sentence, consistent with the statutory range. Judge Reeves properly found sentencing facts by a preponderance of he evidence, and his sentence reflected awareness that *Booker* rendered the Guidelines nonmandatory. Thus, even if reviewed, the sentence would be appropriate under *Booker*.

[Record No. 213] The Court has reviewed this claim *de novo* and agrees with the Magistrate Judge's conclusion that Harding's sentence was proper under *Booker*.

## IV. Evidentiary Hearing

Harding has not demonstrated any facts that, if fully developed, could lead the Court to find that habeas relief is appropriate. *See Lott v. Coyle*, 261 F.3d 594, 602 (6th Cir. 2001) ("A district court may, in the context of a habeas proceeding, permit discovery, provided that the habeas petitioner presents specific allegations showing reason to believe that the facts, if fully developed, may lead the district court to believe that federal habeas relief is appropriate."). Here, Harding validly waived his right to appeal or file a separate lawsuit attacking his guilty plea, conviction and sentence. Therefore, the Court will enforce the waiver provision. Nevertheless, the Court finds that Harding has failed to raise any meritorious claim. Accordingly, the undersigned agrees with the Magistrate Judge's conclusion that a hearing is not warranted on Harding's claims.

## V. Certificate of Appealability

Finally, the Court also finds that a certificate of appealability should not issue in this case on any of Harding's claims. To be entitled to a certificate of appealability, a petitioner must

-14-

demonstrate that "jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, Harding's claims plainly fail on the merits, and the Court does not believe that a reasonable jurist would find this assessment debatable or wrong.

## VI.    Conclusion

Accordingly, having reviewed the Magistrate Judge's Recommended Disposition, as well as Harding's objections, the record, and the applicable law *de novo*, it is hereby

**ORDERED** as follows:

1.    United States Magistrate Judge Robert E. Wier's Recommended Disposition [Record No. 213] is **ADOPTED** and **INCORPORATED** by reference.

2.    Harding's objections [Record No. 219] to the Magistrate Judge's Recommended Disposition are **DENIED**.

3.    Harding's motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255 [Record No. 174] is **DENIED**.

4.    A Certificate of Appealability shall not issue because Harding has not made a substantial showing of the denial of any substantive constitutional right

5.    The United States' motion to dismiss [Record No. 183] is **GRANTED**. Harding's civil action filed pursuant to 28 U.S.C. § 2255 is **DISMISSED** and **STRICKEN** from the Court's docket.

This 29th day of August, 2008.

 Signed By:

**_Danny C. Reeves_** DCR

**United States District Judge**